**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-01943-REB

MIGUEL TRIMBLE,

      Applicant,

v.

TRAVIS TRANI, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

Blackburn, J.

      Applicant, Miguel Trimble, is a prisoner in the custody of the Colorado

Department of Corrections (DOC) who was incarcerated at the Limon, Colorado,

correctional facility when he initiated this action by filing *pro se* an application for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 (application) [#1][1] challenging the

validity of his convictions and sentence in Denver District Court case number

99CR4106.  He currently is incarcerated at the Arkansas Valley Correctional Facility.  In

his habeas corpus application, he asserted six claims, including twenty-two subclaims in

claim four.  He has paid the $5.00 habeas corpus filing fee.

      On August 19, 2009, United States magistrate judge Boyd N. Boland ordered

Respondents to file within twenty days a pre-answer response limited to addressing the

---

[1][#1] is an example of the convention I use to identify the docket number assigned to a specific
paper by the Court's electronic case filing and management system (CM/ECF).  I use this convention
throughout this order.

affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and/or exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).  On August 21, 2009, Mr. Trimble filed a supplement to his application.  On September 15, 2009, after being granted an extension of time, Respondents filed their pre-answer response.  On October 1, 2009, Mr. Trimble submitted a reply and supplemental reply.

On October 23, 2009, magistrate judge Boland ordered Respondent to supplement within twenty days their pre-answer response with any procedural default arguments they may seek to raise with respect to Mr. Trimble's fourth claim, failing which any arguments as to procedural default may be waived.  On November 12, 2009, Respondents filed a supplemental pre-answer response.  On December 10, 2009, Mr. Trimble filed a reply to the supplemental pre-answer response in which he included, *inter alia*, a request for an evidentiary hearing.  On December 16, 2009, magistrate judge Boland denied the request for an evidentiary hearing and ordered Mr. Trimble to file within twenty-one days a supplemental reply that addressed the procedural default arguments raised by Respondents.  On January 11, 2010, Mr. Trimble filed a supplemental reply.

On March 8, 2010, the court dismissed the case in part and drew the remaining claims and the case to a district judge and a magistrate judge.  The court dismissed as procedurally barred subclaims eight and twenty of claim four and subclaim twenty-two of claim four as repetitive.  The court drew claims one, two, and three; claim four subclaims one through seven, nine through nineteen, and twenty one; and claims five and six.  These claims remain pending.

On March 9, 2010, the court ordered Respondents to file an answer by March 15,

2

2010.  The court later granted Respondents' motions for an extension of time up to and including April 9, 2010.  On April 9, Respondents filed the answer [#33].  On May 11, 2010, Mr. Trimble filed a reply [#36].  On July 21, 2010, he filed a traverse [#39].  On October 15, 2010,  the clerk of the court for the Denver District Court was ordered to provide the state court record.  On November 3, 2010, the state court record was filed.

On May 11, 2011, Mr. Trimble filed a motion for stay [#45].  On May 13, 2011, the court ordered Respondents to respond to the motion for stay.  On May 24, 2011, Respondents filed their response [#47].

In considering Mr. Trimble's filings, the court is mindful that he is proceeding *pro se* and, therefore, the court construes his pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* litigant retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the court must apply the same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  For the reasons stated below, the court will deny the motion for stay, and dismiss pending claims claim one, two, and three; claim four subclaims one through

3

seven, nine through nineteen, and twenty one; and claims five and six.

## I. Factual and Procedural Background

The background of this case was summarized by the Colorado Court of Appeals

in *People v. Trimble*, No. 02CA0171 (Colo. Ct. App. Dec. 23, 2004) (not published), as

follows:

> Defendant and two other men stopped their vehicle in an area known for drug transactions. The victim and his friend approached the vehicle and asked if any of the occupants needed anything.  A passenger replied, "No."  The victim then asked, "Do you all have something?"  A passenger responded, "Yeah, what do you want?"  The victim stated, "I want to double up on 100," which meant he wanted $100 worth of crack cocaine.  One passenger got out of the vehicle and drew a gun.  The victim's friend ran from the scene, but heard an occupant of the vehicle state, "Break yourself.  You know what time it is," which meant that the victim was being robbed.  The passenger and the victim engaged in a struggle, during which the victim was fatally shot.

> Defendant and the two other men left the scene in their vehicle, which police officers spotted a short time later. A high-speed chase ensued, ending when the vehicle crashed into a fence.  Defendant then fled on foot, but was apprehended hiding nearby in the bushes, and a weapon was found in the area.

*Id.* (answer, ex. B) at 1.

A jury convicted Mr. Trimble of felony murder and attempted aggravated robbery

in Denver District Court case number 99CR4106.  He was sentenced to life

imprisonment without the possibility of parole.  On December 23, 2004, the Colorado

Court of Appeals affirmed his convictions on direct appeal.  *See* No. 02CA0171

(answer, ex. B).  On August 22, 2005, the Colorado Supreme Court denied certiorari

review.  *See* No. 05SC331 (answer, ex. C).

4

Generally, a conviction becomes final following a decision by the state court of last resort on direct appeal when the United States Supreme Court denies review, or, if no petition for writ of certiorari is filed, when the time for seeking such review expires. *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001). Pursuant to Rule 13.1 of the Rules of the Supreme Court of the United States, Mr. Trimble had ninety days to seek review in the United States Supreme Court after the Colorado Supreme Court denied his petition for writ of certiorari on direct appeal on August 22, 2005, but he did not do so. Therefore, Mr. Trimble's conviction became final on November 21, 2005, when the time for filing a petition for writ of certiorari in the United States Supreme Court expired.[2]

On February 1, 2006, Mr. Trimble filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure, which the trial court denied without a hearing on March 1, 2006. On July 12, 2007, the Colorado Court of Appeals affirmed. *See People v. Trimble*, No. 06CA0670 (Colo. Ct. App. July 12, 2007) (not published) (answer, ex. F). On October 29, 2007, the Colorado Supreme Court denied certiorari review. *See* No. 07SC710 (answer, ex. H).

In August, 2008, Mr. Trimble filed a second Colo. R. Crim. P. 35(c) motion, which the trial court denied without a hearing. On July 2, 2009, the Colorado Court of Appeals affirmed. *See People v. Trimble*, No. 08CA1839 (Colo. Ct. App. July 2, 2009) (not published) (answer, ex. K). He did not seek certiorari review in the Colorado Supreme Court.

On August 14, 2009, Mr. Trimble filed his application with this court, which

---

[2]The ninetieth day after August 22, 2005, was Sunday, November 20, 2005. Therefore, the filing period extended until Monday, November 21, 2007. *See* Sup. Ct. R. 30.1.

dismissed the application in part on March 8, 2010.  In the March 8 partial dismissal

order, the court found the application to be timely, and dismissed three portions of claim

four as follows:  subclaims eight and twenty as unexhausted and procedurally barred

and subclaim twenty-two as repetitive.  The court drew for further proceedings the case

and the remaining exhausted claims as follows:  Claims one, two, three, five, six, and

the following portions of claim four:  subclaims one through seven, nine through

nineteen, and twenty-one.

Before addressing the merits of Mr. Trimble's exhausted and remaining claims,

the court first will address the motion for stay.

## II.  Motion for Stay

Mr. Trimble asks this Court to stay the instant habeas corpus proceeding so that

he may return to the state courts to exhaust a claim pursuant to *Graham v. Florida*, 130

S. Ct. 2011 (2010), decided on May 17, 2010, and modified on July 6, 2010.  In *Rhines*

*v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that a district court has

discretion to stay a mixed petition while the petitioner returns to state court to exhaust

his unexhausted claims.  *Id.* at 277.  However, "stay and abeyance should be available

only in limited circumstances."  *Id.*  Pursuant to *Rhines*, Mr. Trimble's motion to stay this

action may be granted only if:  (1) he has good cause for his failure to exhaust his

claims first in state court; (2) the unexhausted claims potentially are meritorious; and (3)

there is no indication that he has engaged in intentionally dilatory litigation tactics.  *Id.* at

278.  Mr. Trimble fails to demonstrate that a stay is appropriate in this case because he

does not address the first and third factors set forth in *Rhines*, and his claim lacks merit

under the second factor, i.e.,  whether the unexhausted claim potentially is meritorious,

6

the only factor he does address.

 *Graham* held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." *Id.* at 2030; *see also id.* at 2034 ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."); *id.* at 2027 ("It follows that, when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability."). *Graham* is expressly limited to nonhomicide offenders; Mr. Trimble was convicted of felony murder. Therefore, *Graham* has no application to him. The unexhausted claim is without merit.

 In addition, a stay and abeyance will not benefit Mr. Trimble because his *Graham* claim is untimely. Although the Court found Mr. Trimble's application to be timely, his *Graham* claim was not included. The claim does not relate back to the claims asserted in the original application, because it does not arise "from the same core facts as the timely filed claims." *See Mayle v. Felix*, 545 U.S. 644, 657 (2005).

 Mr. Trimble is subject to the one-year tolling requirement under § 2244(d), and the remaining eleven days of the limitation period under § 2244(d)(1)(A) have run. *See* Order Dismissing Case in Part and Drawing Case in Part to District Judge and to Magistrate Judge [#23] at 3-4. The time the instant action was pending in this court does not toll the time under § 2244(d). *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)" and "therefore did not toll the limitation period during the pendency of [applicant's] first federal habeas petition").

7

Only § 2244(d)(1)(C) may provide a later start date for the limitation period. Under § 2244(d)(1)(C), the limitation period starts on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Here, the Supreme Court in *Graham* concluded that a life sentence for nonhomicide offenders was contrary to "evolving standards of decency." *Id.* at 2021 (internal quotation marks omitted). The Supreme Court in *Graham* does not cite to a newly recognized constitutional right or apply the opinion retroactively to the conviction of a habeas corpus applicant that already was final under a former standard of decency at the time of the decision. Thus, the motion for stay will be denied.

## III.  Analysis

### A.  Standard of Review on the Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Trimble seeks to apply a

rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the court's inquiry pursuant to 28 U.S.C. § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an

9

> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct, and Mr. Trimble bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

10

The court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

Finally, if the state court does not address a claim on the merits, the court must review the claim *de novo* and the deferential standards in 28 U.S.C. § 2254(d) are not applicable. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B.  Claims

The court now will address the merits of Mr. Trimble's exhausted, and remaining, claims:

1.      invalid waiver of his right to testify in his own behalf;

2.      inadmissible hearsay evidence involving the victim and a victim's friend;

3.      inadmissible testimony;

4.      ineffective assistance of trial and appellate counsel, including the following subclaims:

Trial counsel did not:

(1)      move for severance from codefendant's case;

(2)      request a hearing based on *Brady v. Maryland*, 373 U.S. 83 (1963);

(3)    (a) correctly advise Mr. Trimble of his right to testify and (b) adequately investigate Mr. Trimble's case;

(4)    (a) adequately investigate whether a witness would testify regarding Mr. Trimble's involvement in a prior murder and (b) correctly advise Mr. Trimble of his right to testify;

(5)    move the court to determine if impeachment evidence regarding a witness existed;

(6)    move the court or prohibit the testimony of a witness under Rule 403 of the Colorado Rules of Evidence;

(7)    correctly advise him on his right to testify against codefendant;

(9), (10), and (11)    prevent the complicity instruction from being given to the jury;

(12) and (13)    request a jury instruction on the term "confederate";

(14)    interview codefendants;

(15)    present a duress defense;

(16)    move for acquittal based on insufficient evidence;

Appellate counsel did not:

(17)    raise an insufficiency-of-the-evidence claim on direct appeal;

(18)    raise trial court's failure to address a discovery claim regarding the prosecution withholding evidence;

(19)    raise the severance issue;

Trial and appellate counsel:

(21)    committed cumulative errors;

5.    inadmissible hearsay evidence involving a witness; and

6.    denial of deoxyribonucleic acid (DNA) testing.

**Claim One**

In his first claim, Mr. Trimble asserts that his judgment of conviction and

sentence were obtained in violation of the Fifth, Sixth, and Fourteenth Amendments of

the United States Constitution based on an invalid waiver of his right to testify in his own

defense.  In his direct appeal, Mr. Trimble argued that the trial court effectively

prohibited him from testifying on his own behalf by erroneously admitting testimony

about his alleged involvement in a homicide four days before the events in this case.

*See* answer, ex. A (opening brief) at 9-16.  Mr. Trimble asserted that this erroneous

ruling impermissibly burdened his constitutional right to testify.  *See id.* at 11-16.  He

raises essentially the same claim before this Court.

A defendant in a criminal case has a fundamental constitutional right to testify in

his own defense.  *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987); s*ee also Faretta v.*

*California*, 422 U.S. 806, 819 &  n.15 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 612

(1972).  Furthermore, "[t]here is a presumption against the waiver of constitutional

rights, and for a waiver to be effective it must be clearly established that there was an

intention relinquishment or abandonment of a known right or privilege."  *Brookhart v.*

*Janis*, 384 U.S. 1, 4 (1966) (internal quotation marks and citations omitted).

A waiver of the right to testify in one's own defense must be voluntary, knowing,

and intelligent.  *Harvey v. Shillinger*, 76 F.3d 1528, 1536 (10th Cir. 1996) (citing *Miranda*

*v. Arizona*, 384 U.S. 436, 444 (1966)); *Curtis*, 681 P.2d at 514-15 (trial court required

under state law to provide a defendant with an on-the-record advisement of his right to

testify to insure that his waiver is voluntary, intelligent, and knowing); *People v. Naranjo*,

840 P.2d 319, 322-23 (Colo. 1922).  To make such a waiver, the defendant must be

aware that he has a right to testify, know the consequences of testifying, and be cognizant that he may take the stand notwithstanding the contrary advice of counsel. *Curtis*, 681 P.2d at 514.  The trial court, however, is not required to inquire into a defendant's decision not to testify, absent a showing that defendant did not make the decision not to testify, or into whether defendant and his attorney disagreed on whether defendant should take the stand.  *See United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983).

A constitutional right, such as testifying in one's own defense, may be burdened impermissibly when there is some penalty imposed for exercising the right.  *See, e.g.*, *Griffin v. California*, 380 U.S. 609 (1965) (permitting prosecutorial comment on an accused's election not to testify and allowing jury to draw adverse inference from accused's failure to testify impermissibly chilled privilege against self-incrimination). However, the United States Constitution does not forbid "every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights."  *Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973); *see also Corbitt v. New Jersey*, 439 U.S. 212, 218 & n.8 (1978) ("[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid.").  The "'threshold question is whether compelling the election impairs to any appreciable extent any of the policies behind the rights involved.'"  *Chaffin*, 412 U.S. at 32 (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971) ("It does no violence to the privilege [against compelled self-incrimination] that a person's choice to testify in his own behalf may open the door to otherwise inadmissible evidence which is damaging to his case."), *overruled on other grounds sub nom.*, *Crampton v. Ohio*, 408 U.S. 941

(1972)).  A defendant who takes the stand in his own behalf may be impeached by proof

of prior convictions or the like.  *See Spencer v. Texas*, 385 U.S. 554, 561 (1967).  Both

the prosecution and the defendant in a criminal trial must make choices as the trial

progresses.  *Ohler v. United States*, 529 U.S. 753, 757 (2000).

      The Colorado Court of Appeals found that Mr. Trimble's constitutional right to

testify was not impermissibly burdened as follows:

> Defendant contends that his constitutional right to testify was impermissibly burdened by the prosecution's threat that if he denied familiarity with the weapon, he would be impeached with evidence that he and the murder weapon were involved in a prior homicide.  We disagree.
>
> At the close of the prosecution's evidence and after the court had given a limited advisement pursuant to People v. Curtis, 681 P.2d 504 (Colo. 1984), the prosecution stated that if defendant testified and denied any connection with the handgun recovered near where the high-speed chase ended, it would attempt to introduce evidence linking the same handgun and defendant to a homicide that occurred four days prior to the incident at issue here.  The prosecution made an offer of proof, apparently intending to call an eyewitness to the prior homicide who would identify defendant as the shooter and an expert in the field of ballistics linking the murder weapon to the prior homicide.  Defendant objected that the evidence constituted prior bad act evidence under CRE 404(b) and requested that the court hold a hearing to determine its admissibility under People v. Spoto, 795 P.2d 1314 (Colo. 1990).
>
> The court initially stated that it could not rule on the admissibility of the evidence because it did not know the context.  It explained to defendant that he needed to discuss with his attorney whether he would testify.
>
> The next day the court gave defendant a complete Curtis advisement, and defendant announced he would not testify.  Immediately after defendant's announcement, defendant's counsel and the trial court engaged in the following exchange:

[DEFENSE COUNSEL]:    [A]s to Mr. Trimble's knowing, intelligent and voluntary decision concerning his right to testify, I have questions about that simply because … [of] certain[ ] questions about the lack of hearing concerning that evidence which the prosecution was proffering and would possibly come in against Mr. Trimble should he testify.

It was advised to Mr. Trimble that the Court was not going to provide that hearing prior to hi[m] taking the stand.  So he made that decision in the absence of knowing whether or not a 404(b) hearing would be held concerning that evidence or what the Court's decision might be on that prior to his taking the stand. . . . .

THE COURT: . . .  I'll just indicate that I've heard an offer of proof from the prosecutor with respect to what evidence would be tendered. And based upon that offer of proof . . . I did make a finding in court with respect to my conclusion given an offer of proof that the evidence outlined by the prosecutors would be admissible as impeachment and would not run afoul of either 404(b) or this [s]upreme [c]ourt decision in <u>Spoto</u>.  [Trial tr. vol. 25 at 129-30, Nov. 6, 2001.]

### A.

A defendant has a due process right to testify in his own defense. That right is a fundamental right, and "the opportunity to decide to exercise it freely and without coercive influence is critical to the fairness of the trial itself." Such a right is impermissibly burdened if there is a penalty imposed for exercising the right.  <u>Apodaca v. People</u>, 712 P.2d 467, 472 (Colo. 1985).

However, not every burden impermissibly chills a defendant's right to testify.  As a division of this court stated in <u>People v. Anderson</u>, 954 P.2d 627, 629 (Colo. App. 1997), "A defendant's right to testify has generally been found to be impermissibly burdened only when there is an issue

16

involving the constitutional admissibility of evidence or when the defendant is forced to choose between the right to testify and some other constitutional right."

In Apodaca v. People, supra, our supreme court held that the defendant's right to testify was impermissibly burdened because the trial court refused to rule on the constitutional admissibility of a prior conviction before requiring the defendant to decide whether to testify.  See People v. Kreiter, 782 P.2d 803 (Colo. App. 1988) (defendant's right to testify was impermissibly burdened because, based on an incorrect burden of proof, the trial court erred in ruling that similar act evidence was admissible to rebut evidence of the defendant's good character under CRE 404(a)(1) and 405); cf. People v. Anderson, supra (defendant's right to testify was not impermissibly burdened when the trial court failed to conduct a hearing in advance of his decision to determine whether his testimony would impliedly waive his statutory physician-patient privilege because the privilege statute did not protect a constitutional right, but rather encouraged patients to fully disclose medical information to their physicians).

Here, if defendant had waived his right against self-incrimination and testified, and even if defense counsel's questions on direct examination had avoided any testimony concerning defendant's familiarity, or lack thereof, with the murder weapon, the prosecutor could have opened that line of questioning on cross-examination. The practical result of a decision to testify is to effect a waiver of the privilege against self-incrimination, at least to the extent necessary to permit effective cross-examination. See Brown v. United States, 356 U.S. 148, 154-56, 78 S.Ct. 622, 626-27, 2 L.Ed.2d 589 (1958); People v. Mozee,723 P.2d 117, 123 (Colo. 1986). Thus, defendant could not selectively assert the right against self-incrimination and would have been forced to answer the questions or risk having his entire testimony stricken.

The extent and type of cross-examination is within the sound discretion of the trial court.  People v. Ibarra, 849 P.2d 33 (Colo. 1993); People v. Silva, 987 P.2d 909 (Colo. App. 1999).  An abuse of discretion is more likely to occur when the trial court's determination relates to the subject matter of the cross-examination rather than to the extent of the permissible exploration.  Banek v. Thomas, 733 P.2d 1171

17

(Colo. 1986).

CRE 611(b) states that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."  This rule is "liberally construed to permit cross-examination on any matter germane to the direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict, or rebut testimony given by the witness."  People v. Salis, 857 P.2d 572, 574 (Colo. App. 1993); see Banek v. Thomas, supra.

> [E]vidence of a prior arrest or criminal charge may be admitted for impeachment purposes when the witness on direct examination has given specific contrary testimony which, if uncontradicted, would likely result in the trier of fact receiving a false or misleading account of the matter which the witness has placed into evidence.

Banek v. Thomas, supra, 733 P.2d at 1176; see People v. Salis, supra.  Despite the latitude allowed on cross-examination, however, the prosecution should avoid questions that imply the defendant has committed other, uncharged offenses.  People v. Herr, 868 P.2d 1121 (Colo. App. 1993).

Here, the trial court determined that defendant could be questioned about his familiarity with the operation and use of the murder weapon and the evidence linking that weapon to his commission of another homicide if he testified he was not familiar with the weapon, or did not know how to operate it.  Because CRE 611(b) is to be liberally construed, we conclude that the trial court did not abuse its discretion in so determining.

Whether a CRE 404(b) analysis is additionally required in determining the scope of impeachment has not been fully analyzed in Colorado.  A division of this court has, however, indicated that if the prior bad act evidence was admitted solely for impeachment purposes, it is questionable whether the CRE 404(b) analysis would be required.  People v. Harris, 892 P.2d 378, 382 (Colo. App. 1994).  Another division of this court has held that the use of a witness's prior

18

conduct to impeach his credibility is addressed in CRE 608(b), not in CRE 404(b).  People v. Kraemer, 795 P.2d 1371, 1377 (Colo. App. 1990).  In People v. Sallis, supra, another division of this court concluded that it was improper to conduct a mock cross-examination of the defendant outside the presence of the jury to assist the defendant in deciding whether to testify.

The Tenth Circuit Court of Appeals has held that cross-examination of a witness on prior bad acts that went to the issue of witness credibility is properly admissible under Fed. R. Evid. 611(b) and is not subject to Fed. R. Evid. 404 (b).  United States v. Rackley, 986 F.2d 1357 (10th Cir. 1993).  The Colorado and federal rules are identical.  Therefore, the federal interpretation of the parallel rules is instructive.  See People v. Harris, supra.

We conclude that when prior bad act evidence is offered only to impeach a defendant who testifies, CRE 404(b) is not applicable, and the trial court need only apply 608(b) or 611(b).  Thus, the trial court here properly concluded that the evidence outlined by the prosecutors would be admissible as impeachment evidence without conducting a CRE 404(b) hearing.

B.

Defendant also contends that the evidence would not be admissible under CRE 403.  Under CRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

However, we decline to address this issue because it was not raised in the trial court.  See People v. Lesney, 855 P.2d 1364 (Colo. 1993).

Answer, ex. B (No. 02CA0171) at 2-8.

As previously stated, Mr. Trimble asserts that his conviction and sentence

violated his constitutional rights because they were based on an invalid waiver of his

19

right to testify in his own defense.  Specifically, he argues that his constitutional right to testify was impermissibly burdened by the prosecution's threat that if he denied familiarity with the weapon, he would be impeached with evidence that he and the murder weapon were involved in a prior homicide.  The claim is without merit.

In the state case, Mr. Trimble had to decide whether or not to take the stand in his own behalf.  *See Ohler*, 529 U.S. 757.  Had he testified, he would have been subject to cross-examination, including for impeachment purposes, and the decision to take the stand may have proved damaging rather than helpful.  *See id.*  Mr. Trimble was not burdened by the fact that the prosecution would have impeached him on cross-examination because of his familiarity with the murder weapon.  *See Corbitt*, 439 U.S. at 218 & n.8.  Impeachment was simply the risk he ran if he had opted to testify.  *See Spencer*, 385 U.S. at 561.

Here, the record shows that the trial court gave Mr. Trimble a full *Curtis* advisement as required by Colorado law.  Trial tr. vol. 25 at 65-67, 71, 123-26, Nov. 6, 2001.  Mr. Trimble waived his right to testify, and nothing in his response to the advisement bears any indication that his decision not to testify was anything other than knowing and voluntary.  Mr. Trimble's solemn declarations in open court carry a strong presumption of verity and thus constitute a formidable barrier to his position that the waiver of his right to testify in his own defense was invalid.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir. 1996); *Laycock v. New Mexico*, 880 F.2d 1184, 1186-87 (10th Cir. 1989).  Moreover, the judge, after observing Mr. Trimble's behavior and listening to his comments in the courtroom, concluded that Mr. Trimble knowingly and voluntarily waived his right to testify.  Trial tr.

20

vol. 25 at 126 , Nov. 6, 2001.

Pursuant to § 2254(e)(1), the factual findings of the state courts that a *Curtis* advisement was given, and that there was a voluntary, knowing, and intelligent waiver of the right to testify, are presumed correct.  Mr. Trimble bears the burden of rebutting this presumption by clear and convincing evidence.  *See* § 2254(e)(1).  He fails to present any clear and convincing evidence to overcome the presumptively correct state court factual determination that he was fully advised of his right to testify, regardless of his attorney's advice.  The uncontroverted or presumptively correct evidence contradicts and overshadows Mr. Trimble's conclusory allegations as to whether his waiver was voluntary.

A determination that there was a voluntary, knowing, and intelligent waiver of a fundamental right is not contrary to, nor an unreasonable application of, federal law with regard to the waiver of fundamental trial rights in general.  *See, e.g., Barker v. Wingo*, 407 U.S. 514, 529 (1972).  Neither is a determination that there was a voluntary, knowing, and intelligent waiver of a fundamental based on an unreasonable determination of the facts in light of the evidence presented, particularly with regard to the substance of the advisement provided to Mr. Trimble.  *See* § 2254(e)(1).  The claim will be dismissed as meritless.

### Claim Two

In claim two, Mr. Trimble asserts that his judgment of conviction and sentence were obtained in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution based on the admission of inadmissible hearsay involving the victim and the victim's companion at the crime scene.

On direct appeal, Mr. Trimble argued that the trial court erroneously ruled that certain statements were admissible because they were statements made by co-conspirators in the furtherance of a conspiracy and, therefore, were not hearsay.  Mr. Trimble maintained that the admission of the statements violated his rights under the Confrontation Clause of the United States Constitution.  *See* answer, ex. A (opening brief) at 16-25.  He raises the same claim before this Court.

The Confrontation Clause of the Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause applies to witnesses against the accused – in other words, those who bear testimony.  *Crawford v. Washington*, 541 U.S. 36, 51 (2004).[3]  Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact.  *Id.* "The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Id.* at 59 n.9.  The Confrontation Clause "restricts only statements meeting the traditional definition of hearsay," i.e., a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

---

[3]In *Crawford*, the Supreme Court tightened the analysis of Confrontation Clause claims by limiting the admissibility of testimonial hearsay.  The Court considers the state of constitutional law as it existed at the time of Mr. Trimble's conviction.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 n.2 (10th Cir. 2006).  It is well established that *Crawford* "does not apply . . . retroactively to cases on collateral review."  *Id.* (citing *Brown v. Uphoff*, 381 F.3d 1219, 1225 (10th Cir. 2004)); *see also Whorton v. Bockting*, 549 U.S. 406, 416-17 (2007) (finding that *Crawford* did not announce a watershed rule, and therefore, could not be applied retroactively in a habeas proceeding commenced by a defendant whose conviction was already final on direct review).  Mr. Trimble's conviction became final in 2005, after the Colorado Supreme Court denied certiorari review with regard to his direct appeal and after *Crawford* was announced in March 2004.  Therefore, *Crawford* applies to his Confrontation Clause claims.

evidence to prove the truth of the matter asserted.  *United States. v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) (citing Fed. R. Evid. 801(c)).

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that the admission of a nontestifying defendant's statement that incriminated a codefendant violated the codefendant's Confrontation Clause rights.  *Id.* at 135-36.  *Bruton*, however, does not preclude the admission of statements by a co-conspirator in furtherance of the conspiracy.  *See United States v. Spotted Elk*, 548 F.3d 641, 662 (8th Cir. 2008) (Confrontation Clause does not apply to nontestimonial out-of-court statements); *United States v. Singh*, 494 F.3d 653, 658-59 (8th Cir. 2007) (co-conspirators' statements in furtherance of the conspiracy were not testimonial under *Crawford*); *see also United States v. Coco*, 926 F.2d 759, 761 (8th Cir. 1991) ("The Confrontation Clause is satisfied when the out-of-court statement in question comes within a firmly rooted hearsay exception"); *Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial-for example . . . statements in furtherance of a conspiracy.").  *Under Crawford*, the Confrontation Clause has no application to out-of-court nontestimonial statements.  *Whorton*, 549 U.S. at 420; *see also Melendez-Dias v. Mass.*, 129 S.Ct. 2527, 2539 (2009).

The Colorado Court of Appeals held that the out-of-court statements made by the victim and the vehicle's occupants were admissible as nonhearsay:

> Defendant contends that the trial court erred in admitting as nonhearsay, pursuant to CRE 801(d)(2)(E), certain statements made by the victim and occupants of the vehicle.  The witness was a friend of the victim who

accompanied him to the vehicle.  Defendant argues that the statement made by the victim, "Double up on a hundred," and the statement made by another vehicle occupant, "Break yourself.  You know what time it is," were inadmissble because the trial court made no finding of a conspiracy.  We disagree and conclude that the statements were properly admitted as nonhearsay.

The Colorado Rules of Evidence strongly favor the admission of material evidence, and a trial court has broad discretion in deciding questions of admissibility of evidence. Absent an abuse of discretion, we will not disturb the evidentiary rulings of a trial court.  People v. Quintana, 882 P.2d 1366 (Colo. 1994).

Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801 (c).  A statement offered to provide context for subsequent events and not for the truth of the matter asserted is not hearsay.  People v. J.M., 22 P.3d 545 (Colo. App. 2000) (officer's testimony about statements made by two boys at the crime scene was not hearsay, because it was not offered for the truth of the boys' statements but to explain the officer's subsequent actions); People v. Banks, 983 P.2d 102 (Colo. App. 1999) (officers' testimony that dispatcher told them that defendant was dangerous was not hearsay, because it was not offered to show that defendant was dangerous; rather, it was offered to show the officers' state of mind and to provide context for their subsequent approach to and interaction with defendant), affd, 9 P.3d 1125 (Colo. 2000).

Here, the witness's testimony regarding the out-of-court statements made by the victim, "Double up on a hundred," and one of the vehicle occupants, "Break yourself. You know what time it is," were not admitted for the truth of the matter asserted but only for the fact that the statements were made.  They were part of the witness's description of the event as he observed it.  Because these statements were admissible as nonhearsay, we find no error.

24

Answer, ex. B (No. 02CA0171) at 9-10.

The Court has reviewed the record, and it is clear that the statements "Double up on a hundred," *see* trial tr., vol. 21, at 141-42, Oct. 31, 2001, and "Break yourself.  You know what time it is," *see* trial tr., vol. 13, at 154-56, 160, 166, July 18, 2001, were admissible as nonhearsay because they were not admitted for the truth of the matter asserted.  Rather, they were offered to show that the statements (1) were made, and (2) were part of the witness's description of the event as he observed it.

Even if these statements were, as Mr. Trimble argues, statements by a co-conspirator made in furtherance of the conspiracy, such statements generally are admissible as hearsay exceptions absent confrontation because they are not testimonial.  Therefore, the Colorado Court of Appeals' finding that the statements properly were admitted is not contrary to or an unreasonable application of federal law.  *See Crawford*, 541 U.S. at 59 n.9.

## Claim Three

In claim three, Mr. Trimble asserts that his judgment of conviction and sentence were obtained in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution based upon the use of inadmissible testimony.

On direct appeal, Mr. Trimble argued that the trial court abused its discretion when it refused to grant a mistrial after the prosecutor inferred that an independent witness knew Mr. Trimble's reputation for selling illegal drugs.  Mr. Trimble further argued that the statement invited the jury to convict him, in part, because of his alleged

25

past criminal acts.  *See* answer, ex. A (opening brief) at 25-27.  While the appeal was

pending, the Supreme Court announced its decision in *Crawford*, and the Colorado

Court of Appeals ordered supplemental briefing regarding the Confrontation Clause

implications, if any, of *Crawford*, on the prosecution's use of out-of-court statements by

the independent witness.  *See* answer, ex. B (No. 2CA0171) at 13.  Mr. Trimble raises

here a claim similar to the claim he raised on direct appeal.

     "The main and essential purpose of confrontation is to secure for the opponent

the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).

An out-of-court statement that falls within an exception to a hearsay rule under a state's

evidentiary rules must be excluded from a defendant's trial if its admission would

deprive him of his constitutional right of confrontation.  *See Stevens v. Ortiz*, 465 F.3d

1229, 1236 (10th Cir. 2006) (citing *Dutton v. Evans*, 400 U.S. 74, 80-82 (1970));

*Crawford*, 541 U.S. at 53-54, 59 (the trial court's admission of an unavailable witness's

testimonial statements against a defendant at trial violates the defendant's confrontation

rights when the defendant has no opportunity to cross examine the witness).  The

Confrontation Clause is not "violated by admission of an identification statement of a

witness who is unable, because of a memory loss, to testify concerning the basis for the

identification."  *See United States v. Owens*, 484 U.S. 554, 564 (1988).     The state

appellate court resolved this Confrontation Clause claim as follows:

> Defendant contends that the trial court erred in
> admitting testimony concerning, and a videotape of an
> interview with, an independent witness.  We disagree.

26

The independent witness was arrested four days after the incident and while in custody volunteered to the police that she saw the incident.  She stated that she was looking for drugs around midnight on the night in question and was on an eight-day crack cocaine drug binge.  As she approached the vehicle she saw defendant, known to her as Godzilla, shoot the victim.  During the interview, she was able to positively identify defendant from his photograph as the person who shot the victim.  The officers summarized her statement in a written report, and the interview was videotaped.

In subsequent interviews with the district attorney's office, the witness backed away from identifying defendant as the shooter. She then admitted that she had been high on drugs the night of the shooting and could not recall what she told the police.

In the first trial, the independent witness stated that on the night of the incident she approached defendant and the other car occupants to buy drugs from them "[b]ecause [she] had bought drugs from two of them before."  She further stated that she knew defendant and one other car occupant by their nicknames and that she knew the individuals involved because she had purchased drugs from them in the past.  This latter statement resulted in a mistrial before any cross-examination.

At the subsequent trial, the independent witness was questioned about the incident.  The independent witness stated she recalled being at the location, approaching the vehicle, and hearing shots.  However, she also stated that she could not recall (1) seeing a car drive by and observing one of the car's occupants exit the car and approach the victim; (2) seeing a second person in the car shoot the victim, exit the car, and shoot him again; (3) seeing three individuals get into the car and drive away; (4) stating that she had seen the victim go to a house and fall on the porch; and (5) having reported any of these events to the police.

The prosecution then offered the independent witness's statements to police made four days after the

homicide, and the trial court admitted them as prior inconsistent statements, pursuant to §16-10-201, C.R.S. 2004.  In that testimony the officer stated, among other things, that the independent witness had been on a "crack binge and was walking towards [defendant and the other car occupants] to get more drugs."

## A.

Defendant contends that the trial court erred by not declaring a mistrial because of the admission of highly prejudicial prior bad act evidence.  We disagree.

Defendant objected that the independent witness's statements to the police concerning her getting more drugs were inadmissible as prior bad act evidence under CRE 404(b) and moved for another mistrial.  The trial court denied his motion for a mistrial, explaining that these statements were different from the witness's statement at the first trial.

The determination of whether to declare a mistrial is within the trial court's sound discretion and should not be disturbed absent evidence that the court grossly abused this discretion.  People v. Jones, 851 P.2d 247 (Colo. App. 1993).

Here, the record discloses that, at the third trial, the independent witness did not indicate any prior drug dealings with defendant.  Therefore, we conclude that it was well within the sound discretion of the trial court to deny defendant's motion for a mistrial.

## B.

While this appeal was pending, the United States Supreme Court announced its decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  At defendant's request, we ordered supplemental briefs on the Confrontation Clause implications, if any, of that case on the prosecution's use of out-of-court statements by the independent witness.  See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (a new

constitutional rule for the conduct of criminal prosecutions is to be applied retroactively to all cases pending on direct review or not yet final).  We conclude that defendant's constitutional right of confrontation was not implicated by the admission of the witness's statements and the police videotape of her interview because the witness testified at trial.

The United States and Colorado Constitutions provide criminal defendants the right to confront the witnesses against them.  See U.S. Const. amend. VI; Colo. Const. art. II, § 16. The Sixth Amendment right of confrontation guaranteed by the United States Constitution is a fundamental right and is applicable to the states through the Fourteenth Amendment.  Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

Admission of hearsay evidence implicates the constitutional right of the defendant to confront witnesses against him.  See Blecha v. People, 962 P.2d 931 (Colo. 1998).  Moreover, a challenge to hearsay evidence based on the Confrontation Clause requires a case-by-case analysis. People v. Oliver, 745 P.2d 222, 226 (Colo. 1987); People v. Dement, 661 P.2d 675, 680 (Colo. 1983).

Until recently, the admissibility of hearsay statements under the Confrontation Clause was governed by the two-part tests of Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).  Under that test, the prosecution must first prove that the witness is unavailable, and then the out-of-court statements may be introduced at trial if they bear adequate "indicia of reliability."  In Crawford, the Court abrogated the second part of the Roberts test, but left the first part intact.

More recently, the Colorado Supreme Court announced its decision in People v. Fry, 92 P.3d 970 (Colo. 2004), incorporating the Crawford analysis.

The Confrontation Clause establishes a rule of necessity requiring the prosecution to produce the witness for trial or demonstrate that the witness is not available to

29

testify at trial.  Ohio v. Roberts, supra, 448 U.S. at 65, 100 S.Ct. at 2538.  If a witness testifies at trial before the trier of fact, then there is no confrontation violation where the witness "concedes making the statements, and . . . may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question."  California v. Green, 399 U.S. 149, 164, 90 S.Ct. 1930, 1938, 26 L.Ed.2d 489 (1970).

In United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the witness was severely injured in a prison attack.  In the following weeks, he identified the defendant as his attacker in his statement to the Federal Bureau of Investigation.  When the case was tried, the victim testified that he could recall the events leading up to the attack and could recall identifying the defendant as his attacker to the FBI, but he could not remember why.  The Court held that introduction of the witness's prior identification statements to the FBI were admissible because the witness was present and testified at trial and was subject to cross-examination before the trier of fact.

Thus, admission of prior out-of-court statements by a forgetful witness is not a violation of a defendant's confrontation right.  Cross-examination provides the defendant with an adequate opportunity to bring forth the witness's infirmities, including a bad memory.  United States v. Owens, supra.

Finally, we note that the Colorado Supreme Court held that a witness's total memory loss, whether real or feigned, does not have Confrontation Clause implications.  People v. Pepper, 193 Colo. 505, 508, 568 P.2d 446, 448-49 (1977) (adopting Justice Harlan's concurrence in California v. Green, supra, 399 U.S. at 188, 90 S.Ct. at 1951).

Accordingly, there was no error in admitting the independent witness's prior out-of-court statements and the videotape of the police interview.

Answer, ex. B (No. 02CA0171) at 10-16.

30

In *Green*, the Supreme Court found that the Confrontation Clause was not violated by admitting a declarant's prior out-of-court statement, as long as the declarant testified as a witness and was subject to full and effective cross-examination at trial.  *Id.* at 164 ("[T]he Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories").  Similarly, Mr. Trimble's constitutional right of confrontation was not implicated by the admission of the independent witness's statements and the police videotape of her interview because she was present and testified at the subsequent trial, was subject to cross-examination before the trier of fact, and was questioned about the inconsistency of her prior and present versions of events.  *See id.*; s*ee also  Owens*, 484 U.S. at 564.  Therefore, the Colorado Court of Appeals' finding of no error in admitting the independent witness's prior out-of-court statements and the videotape of the police interview is not contrary to or an unreasonable application of federal law.  *See Crawford*, 541 U.S. at 59 n.9.

## Claim Four

In his fourth claim, Mr. Trimble alleges that his judgment of conviction and sentence were obtained in violation of the Fifth, Sixth, and Fourteenth amendments to the United States Constitution because he had ineffective assistance of trial and appellate counsel based upon the reasons outlined above in subclaims one through

seven, nine through nineteen, and twenty-one.

It was clearly established when Mr. Trimble was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective, Mr. Trimble must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Trimble's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Trimble must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether Mr. Trimble has established prejudice, the court must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Applicant. *See Boyd*, 179 F.3d at 914.

Finally, ineffective-assistance-of-counsel claims are mixed questions of law and

fact.  *See Strickland*, 466 U.S. at 698.  Conclusory allegations that counsel was

ineffective are not sufficient to warrant habeas relief.  *See Humphreys v. Gibson*, 261

F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Mr. Trimble fails to satisfy either prong of the

*Strickland* test, the ineffective assistance of counsel claim must be dismissed.  *See*

*Strickland*, 466 U.S. at 697.  The *Strickland* standard applies to claims of ineffective

assistance of appellate counsel.  *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000).

The Colorado Court of Appeals applied the proper *Strickland* standards and

rejected Mr. Trimble's ineffective-assistance-of-counsel claim in his first Colo. R. Crim. P.

35(c) postconviction motion because he failed to prove the prejudice prong of the

*Strickland* test:

> We now address defendant's remaining claims of
> ineffective assistance of trial and appellate counsel. To
> establish an ineffective assistance of counsel claim,
> defendant must establish that (1) counsel's performance was
> outside the wide range of professionally competent
> assistance; and (2) defendant was prejudiced by counsel's
> errors. Strickland v. Washington, 466 U.S. 668, 670, 104
> S.Ct. 2052, 2056, 80 L.Ed.2d 674 (1984).  "Failure to make
> the required showing of either deficient performance or
> sufficient prejudice defeats the ineffectiveness claim."
> Strickland v. Washington, supra, 466 U.S. at 700, 104 S.Ct.
> at 2071.  If a defendant fails to allege any prejudice from
> counsel's performance, the court need not consider whether
> such performance was deficient. People v. Chambers, 900
> P.2d 1249, 1252 (Colo. App. 1994) (citing Strickland v.
> Washington, supra).
>
> Because defendant's motion fails to allege prejudice, it
> is inadequate on its face.  Defendant makes only conclusory
> statements of deficient performance.  The motion does not
> allege prejudice, or explain how "there is a reasonable
> probability that, but for counsel's unprofessional errors, the

> result of the proceeding would have been different."
> Strickland v. Washington, supra, 466 U.S. at 694, 104 S.Ct.
> at 2068.  Therefore, we need not address defendant's
> assertion of ineffective assistance of trial and appellant [sic]
> counsel.

Answer, ex. F (06CA0670) at 4-5.

The Colorado Court of Appeals discussed Mr. Trimble's claims of ineffective assistance of counsel in a general manner, disposing of them as conclusory and for failure to allege prejudice.  *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also United States v. Gonzalez*, 596 F.3d 1228, 1233 (10th Cir.), *cert denied*, 131 S. Ct. 172 (2010) (a reviewing court may, if it appears to be the more sensible course of action, "proceed directly to the prejudice prong of the *Strickland* analysis.").  Because Mr. Trimble asserts an unwieldy number of subclaims, the Court, for purposes of efficient discussion, has organized into groups the subclaims that are substantially related.

## A.  Trial Counsel's Failure to Advise

Mr. Trimble complains that trial counsel did not (3)(a) and (4)(b) correctly advise him of his right to testify and (7) correctly advise him on his right to testify against codefendant.  He fails to allege how he was prejudiced by counsel's alleged actions or inaction.  Although Mr. Trimble's *pro se* § 2254 application must be construed liberally, the court is not required to fashion his arguments for him where his allegations are merely conclusory or suggestive in nature and are without supporting factual averments.

*See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  He committed the same failure in the state courts and, as a result, the Colorado Court of Appeals' found that Mr. Trimble failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  The state appeals court's finding is not contrary to or an unreasonable application of federal law.

## B.  Trial Counsel's Tactical Decisions

Mr. Trimble also complains that trial counsel did not (1) move for severance from codefendant's case; (2) request a hearing based on *Brady v. Maryland*, 373 U.S. 83 (1963); (5) move the court to determine if impeachment evidence regarding a witness existed; (6) move the court or prohibit the testimony of a witness under CRE 403; (9), (10), and (11) prevent the complicity instruction from being given to the jury; (12) and (13) request a jury instruction on the term "confederate"; (15) present a duress defense; and (16) move for acquittal based on insufficient evidence.

Mr. Trimble fails to make factual allegations in support of his ineffective-assistance-of-counsel arguments.  As a result, he fails to meet his burden, i.e., he fails to overcome the presumption that counsel's performance fell within the range of reasonable professional assistance by showing that the alleged errors were not sound strategy under the circumstances.  *See Strickland*, 466 U.S. at 689 ("the constitutionally protected independence of counsel" and "wide latitude counsel must have in making tactical

35

decisions" should not be restricted).  His arguments are too vague and conclusory to warrant further discussion or consideration.  *See Humphreys*, 261 F.3d at 1022 n.2.  As previously stated, although Mr. Trimble's *pro se* § 2254 application must be construed liberally, the Court is not required to fashion his arguments for him where his allegations are merely conclusory or suggestive in nature and are without supporting factual averments.  *See Fisher*, 38 F.3d at 1147; *see also Dunkel*, 927 F.2d at 956.

The Colorado Court of Appeals' found that Mr. Trimble's allegations of ineffective assistance were only conclusory statements of deficient performance that failed to allege prejudice or explain how there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  This finding is not contrary to or an unreasonable application of federal law.

### C.  Trial Counsel's Failure to Investigate

Mr. Trimble further complains that trial counsel failed to (3)(b) investigate adequately his case and (4)(a) investigate adequately whether a witness would testify regarding Mr. Trimble's involvement in a prior murder.  Although counsel's duty to conduct a thorough investigation of possible mitigating evidence is well established, *see, e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 387 (2005), "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  An applicant who challenges his counsel's effectiveness because of his failure to

investigate must establish that the decision not to investigate was unreasonable from counsel's perspective at the time the decision was made.  *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005).  In other words, Mr. Trimble must show that counsel's decision was not sound strategy at the time.

He failed to do so.  The state court of appeals found that Mr. Trimble's assertions concerning his counsel's failure to investigate constituted conclusory statements of deficient performance that failed to result in prejudice to his defense, not specific and particularized factual allegations.  As previously stated, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys*, 261 F.3d at 1022 n.2.  The Colorado Court of Appeals' finding that Mr. Trimble's allegations of ineffective assistance were conclusory and failed to demonstrate prejudice, *Strickland*, 466 U.S. at 694, accord with clearly established federal law.

### D.  Trial Counsel's Failure to Interview

Lastly, Mr. Trimble complains that trial counsel did not (14) interview codefendants.  He failed, however, here and in the state courts, to explain how his counsel's conduct with respect to this subclaim prejudiced him, as required for a successful claim of ineffective assistance of counsel under *Strickland*.  The Colorado Court of Appeals' finding that Mr. Trimble failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, is not contrary to or an unreasonable application of federal law.

37

### E.  Appellate Counsel

The Court's review of the ineffective-assistance-of-appellate-counsel claims is

governed by the standards in *Strickland* with one additional step.

> When a habeas petitioner alleges that his appellate counsel
> rendered ineffective assistance by failing to raise an issue on
> direct appeal, we first examine the merits of the omitted
> issue.  If the omitted issue is meritless, then counsel's failure
> to raise it does not amount to constitutionally ineffective
> assistance.  If the issue has merit, we then must determine
> whether counsel's failure to raise the claim on direct appeal
> was deficient and prejudicial.

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (citation omitted).

Mr. Trimble complains that appellate counsel did not (17) raise an insufficiency-of-

the-evidence claim on direct appeal, (18) raise the trial court's failure to address a

discovery claim regarding the prosecution withholding evidence, and (19) raise the

severance issue.  The Colorado Court of Appeals first addressed Mr. Trimble's

subclaims against his appellate counsel in its affirmance on his first Colo. R. Crim. P.

35(c) motion as discussed above, finding that his allegations against appellate counsel,

like those against trial counsel, were conclusory and failed to allege prejudice.  *See*

answer, ex. F (No. 06CA0670) at 4-5.

For the same reasons addressed in the above discussion of Mr. Trimble's

subclaims of ineffective assistance of trial counsel, the finding by the Colorado Court of

Appeals that Mr. Trimble's allegations of ineffective assistance of appellate counsel were

conclusory and failed to demonstrate prejudice, *Strickland*, 466 U.S. at 694, accord with

clearly established federal law.  Therefore, no reason exists for examining the merits of

the issues Mr. Trimble contends appellate counsel failed to raise.

In affirming the denial of Mr. Trimble's second Colo. R. Crim. P. 35(c)

postconviction motion, the state appeals court held as follows:

> We agree with the trial court that defendant's ineffective assistance of appellate counsel claim either was, or could have been raised in his previous postconviction motion, and therefore, the trial court was required to deny defendant's most recent motion in accordance with Crim. P. 35(c)(3)(VI) and (VII).  *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (Rule 35 proceedings are intended to prevent injustices after conviction and sentencing, not to provide perpetual review).

*See* answer, ex. K. (No. 08CA1839) at 1-2.

The ineffective-assistance-of-appellate-counsel claim Mr. Trimble sought to raise

in the second Colo. R. Crim. P. 35(c) postconviction motion was defaulted in state court

on an independent and adequate state procedural ground pursuant to Crim. P.

35(c)(3)(VI) and (VII).  As a general rule, federal courts "do not review issues that have

been defaulted in state court on an independent and adequate state procedural ground,

unless the default is excused through a showing of cause and actual prejudice or a

fundamental miscarriage of justice."  *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir.

1998).  Application of this procedural default rule in the habeas corpus context is based

on comity and federalism concerns.  *See Coleman v. Thompson*, 501 U.S. 722, 730

(1991).  Mr. Trimble's *pro se* status does not exempt him from the requirement of

demonstrating either cause and prejudice or a fundamental miscarriage of justice.  *See*

*Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

To demonstrate cause for his procedural default, Mr. Trimble must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003).  A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *see also United States v. Cervini*, 379 F.3d 987, 991-92 (10th Cir. 2004).  A "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  To demonstrate a fundamental miscarriage of justice, Mr. Trimble first must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.*  Mr. Trimble  then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Mr. Trimble fails to argue any basis for a finding of cause and prejudice or a fundamental miscarriage of justice in this action.  Therefore, because Mr. Trimble has failed to demonstrate cause and prejudice or a fundamental miscarriage of justice, the Court finds that the ineffective-assistance-of-appellate counsel claim that Mr. Trimble sought to raise in his second Colo. R. Crim. P. 35(c) motion also is procedurally barred.

### F.  Trial and Appellate Counsel

As his final ineffective assistance of counsel subclaim, Mr. Trimble complains that

40

trial and appellate counsel (21) committed cumulative errors.  His unsupported argument

is too vague and conclusory to warrant further discussion or consideration.  *See*

*Humphreys*,  261 F.3d at 1022 n.2; s*ee also Fisher*, 38 F.3d at 1147; *Dunkel*, 927 F.2d at

956.  Given that the Colorado Court of Appeals rejected Mr. Trimble's individual claims of

ineffective assistance of trial and appellate counsel as conclusory and for failure to allege

prejudice, there is no basis for cumulative error.  Therefore, like the state appellate court,

this Court need not address Mr. Trimble's assertions.

### Claim Five

As his fifth claim, Mr. Trimble complains that inadmissible hearsay evidence

involving the witness Patterson was admitted.  Respondents argue that this claim

appears to deal with the same issues and facts involved in claim three, and should fail

for the same reasons.  In order to confirm that Patricia Patterson is the independent

witness discussed in claim three who knew Mr. Trimble's reputation for selling illegal

drugs, the court reviewed the record and specifically those portions of the trial court

transcript pertinent to the testimony of Ms. Patterson, as well as of Jonathyn W. Priest

and Martin E. Vigil, police officers with the City and County of Denver, and Randall

Gordanier, an investigator with the Denver district attorney's office, each of whom

interviewed Ms. Patterson after the homicide concerning her observations.  *See* trial tr.

vol. 22 at 178-231, Nov. 1, 2001; *see also* trial tr. vol 24 at 67-70, Nov. 5, 2001.  The

court agrees that this claim deals with the same issues and facts involved in claim three,

and fails for the same reasons addressed in the discussion of claim three.

41

**Claim Six**

In his sixth claim, Mr. Trimble asserts that the state courts denied his request for

DNA testing to prove his innocence and his claims of ineffective assistance of counsel.

The Colorado Court of Appeals rejected his argument as follows:

> We reject defendant's assertion that he is entitled to subject evidence to DNA testing.  As relevant here, a motion seeking postconviction DNA testing must include specific facts sufficient to demonstrate, by a preponderance of the evidence, that favorable results from testing will establish the petitioner's actual innocence. § 18-1-4-413(1), C.R.S. 2008. The term "actual innocence" is defined as "clear and convincing evidence such that no reasonable juror would have convicted the defendant." § 18-1-411(1), C.R.S. 2008. If the motion, files and record of the case show that defendant is not entitled to relief under section 18-1-413, the trial court is required to deny the motion without conducting a hearing or appointing counsel. § 18-1-412(3), C.R.S. 2008.
>
> Here, defendant's motion seeks DNA testing of blood on the shoe that he was wearing when the crimes were committed.  He alleges that (1) a serology test performed on the blood that indicated it could belong to the victim was the only direct evidence linking him to the victim; (2) the serology test did not rule out that the blood could have come from him; and (3) DNA testing would definitely prove that the blood belonged to him, not the victim.
>
> Based upon our review of the motion, record, and files, even if we accept as true defendant's allegation that the testing would show that the blood on the shoe came from him, not the victim, we conclude that he is not entitled to relief.  Such evidence would not clearly and convincingly prove that he did not participate in the robbery and thus, would not exculpate him of felony murder. Therefore, even favorable DNA evidence for defendant would not demonstrate his *actual innocence.*  Accordingly, the trial court did not err in denying the motion.  *See* § 18-1-412(3).

> Because we have concluded that the DNA testing
> would not have demonstrated defendant's actual innocence,
> it necessarily follows that defendant was not prejudiced by
> trial counsel's failure to request the DNA testing, and thus, his
> ineffective of trial counsel claim also fails. *See Ardolino v.*
> *People,* 69 P.3d 73, 77 (Colo. 2003) (denial of the motion
> without a hearing is justified if the existing record establishes
> that the defendant's allegations, even if proven true, would
> fail to establish either deficient representation or prejudice);
> *People v. Karpierz,* 165 P.3d 753, 759 (Colo. App. 2006) (to
> prove prejudice, a defendant must show a reasonable
> probability that, but for counsel's ineffective assistance, the
> result of the proceeding would have been different.

Answer, ex. K (No. 08CA1839) at 2-4.

Mr. Trimble based his claim for DNA testing on an interpretation of state law.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*,

502 U.S. 62, 67 (1991) (internal quotation marks and citations omitted).  It is not the

province of a federal habeas court to re-examine state-court determinations on state-law

questions.  *Id.* at 67-68.  While the "Supreme Court has suggested that, in rare

circumstances, a determination of state law can be 'so arbitrary or capricious as to

constitute an independent due process . . . violation,'" *Cummings v. Sirmons,* 506 F.3d

1211, 1237 (10th Cir.2007) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)), that is

not the case here.  For the reasons stated by the Colorado Court of Appeals, DNA

testing would not have established defendant's actual innocence.  It necessarily follows

that Mr. Trimble was not prejudiced by trial counsel's failure to request the DNA testing,

and, therefore, his ineffective-assistance-of-counsel claim premised on the failure to

seek DNA testing also fails.

## IV.  Conclusion

For the reasons stated above, habeas corpus relief will be denied.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the motion for stay [#45] is denied;

2.  That the application [#1] for relief under 28 U.S.C.  § 2254 is denied;

3.  That the action is dismissed with prejudice;

4.  That no certificate of appealability will issue because Applicant has not made a

substantial showing of the denial of a constitutional right; and

5.  That each party shall bear its own costs and attorney fees.

Dated August 5, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge